Eva MAY, Administratrix of the Estate of Israel May, deceased; Eva May and C. Atwell, Plaintiffs in Error,

v.

Ernest ARCHER, Effie M. Archer, Clarence M. Trent and Peppers Refining Company, Defendants in Error.

No. 36873.

Supreme Court of Oklahoma.

May 1, 1956.

Rehearing Denied Oct. 23, 1956.

Hill & Godfrey, by Houston Bus Hill, Oklahoma City, Mauntel & Doolin, Alva, C. E. Wilhite, Alva, for plaintiffs in error.

Nathan Scarritt, Enid, T. Murray Robinson, Oklahoma City, Cecil E. Munn, E. S. Champlin, Fort Worth, Tex., Harold G. Forbes, Eureka, Kan., for defendants in error.

HALLEY, Justice.

This action was filed December 1, 1953, in the District Court of Woods County, Oklahoma, by Israel May and wife, Eva May, to quiet title to the surface and three-fourths of the minerals in the West Half of the Northeast Quarter of Section 20, 29 North, Range 17 West, Woods County, Oklahoma. The original defendants were Ernest Archer and wife, Effie M. Archer and Clarence M. Trent. Other parties, Davis & Wharton Drilling Company, Clifton Gall, C. Atwell and Peppers Refining Company, were made parties defendant; Israel May died and his surviving wife, Eva May, was made plaintiff. Clarence M. Trent and Peppers Refining Company filed a cross-petition.

Davis & Wharton Drilling Company and Clifton Gall filed disclaimers, but C. Atwell filed an answer and cross-petition. The first trial was had on June 3, 1954, and the court found for the plaintiffs. A motion for a new trial was sustained and a second trial held November 10, 1954, and at the conclusion of the second trial the court rendered judgment for the defendants.

A clear understanding of the issues requires a review of the history of the title to the land involved.

In 1908, Henry J. Archer obtained a patent to the entire Northeast Quarter of Section 20 above mentioned. Only the West Half of the Northeast Quarter is involved here. The complete title to this 80 acres remained in Henry J. Archer until April, 1929, when he conveyed to his daughter, Elizabeth Metcalf, an undivided one-half interest in the minerals under the West Half of the Northeast Quarter.

In January, 1930, Henry J. Archer died intestate, leaving as his heirs his surviving wife, Martha V. Archer, and three children, a daughter Elizabeth Metcalf and two sons, Ernest Archer and Emile Archer. Emile Archer became administrator of the estate and the heirs decided to sell the land to Israel May. The surviving wife, his son, Ernest, and his daughter conveyed the interest they had inherited from their father to Emile Archer by quitclaim deeds and, on March 19, 1931, Emile Archer executed a quitclaim deed to Israel May conveying all their interest in the West Half of the Northeast Quarter. Elizabeth Metcalf executed a quitclaim deed direct to Israel May covering all interest she had in the West Half of the Northeast Quarter except a one-fourth interest in the minerals.

On February 7, 1931, when Ernest Archer executed a quitclaim deed to his brother, Emile Archer, purportedly conveying all of the interest he owned in the West Half of the Northeast Quarter, his sister, Elizabeth Metcalf, on the same date

executed a mineral deed to Ernest Archer conveying to him an undivided one-fourth interest in the minerals under the West Half of the Northeast Quarter. These facts are very important because the plaintiffs contend that the quitclaim deed of Ernest Archer to his brother Emile, purporting to convey all of his interest in the West Half of the Northeast Quarter, and Emile Archer's later deed to Israel May covered and conveyed to May the interest conveyed to Ernest Archer by Elizabeth Metcalf in the minerals on the same date. These contentions constitute the most vital issue involved and covers the 20 acres in the minerals claimed by both the plaintiffs and defendants.

The record shows no further action by the heirs of Henry J. Archer in regard to this property until October 29, 1946, when Ernest Archer and wife, the grantees in the mineral deed conveying to them a one-fourth interest in the minerals by Elizabeth Metcalf on February 7, 1931, executed a mineral deed to themselves as joint tenants. On September 21, 1953, Ernest Archer and wife executed a mineral deed to this one-fourth interest to Clarence M. Trent, and on September 23, 1953, Elizabeth Metcalf conveyed a one-fourth interest in the minerals to Clarence M. Trent.

This assertion of such an interest in the minerals doubtless caused Israel May to file this action to quiet his title. The court found that after the commencement of this action Ernest Archer and wife quitclaimed all their interest in the land involved to Israel May and that Eva May now owns a five-eighth interest in the minerals. We find it unnecessary to discuss the oil and gas lease rights decided by the court since the deciding issue covers the ownership of the minerals in place.

It is not disputed that the plaintiff, Israel May, acquired his deed from Emile Archer March 19, 1931, and had since that date held actual, open and peaceable possession of the land, paying the taxes, cultivating the land and keeping it under fence and had also mortgaged it to the Federal Land Bank at Wichita, Kansas, and had executed

an oil and gas lease covering the interest which he claims. About September 28, 1953, they learned of the joint tenant deed from Ernest Archer and wife to themselves as joint tenants and that Ernest Archer and wife had executed an oil and gas lease on the land to Clarence M. Trent, to whom they had conveyed a 10 acre mineral interest in September, 1953.

The plaintiffs in error contend that any claim by the defendants is barred by the fifteen year statute of limitations, 12 O.S.1951 § 93(4), and laches. Fifteen years had elapsed from February 7, 1931, to November 29, 1946, when Ernest Archer first asserted ownership of a one-fourth interest in the minerals. However, the rule is well established that limitations do not run in favor of the owner of the surface rights against the owner of an interest in the minerals where there was no production, as here, and in the absence of any hostile claim or act by the owner of the surface.

In the case of Deruy v. Noah, 199 Okl. 230, 185 P.2d 189, 191, it was said:

"The general rule is: 'The decisions are unanimous in holding that where the title to the mineral right has been severed from the title to the surface, possession of the surface by its owner is not adverse to the owner of the mineral below it. The mineral owner does not lose his possession by any length of nonuser, and the surface owner cannot acquire title to the minerals by adverse possession based on his exclusive and continued occupancy of the surface alone. It is said that inasmuch as the severance of the title of the mineral estate from the surface estate creates two estates which are as distinct as if they constituted two different parcels of land; it naturally follows that the title to one cannot be acquired by adverse possession of the other. Nor is the rule changed by the fact that the possession of the surface is under a deed that describes the lands by metes and bounds and

makes no reference to the mineral rights reserved by an earlier deed.' 1 Am.Jur., pp. 858, 859."

■ In Stallings v. White, 194 Okl. 649, 153 P.2d 813, 817, it is said in regard to laches:

"The contention of plaintiffs in error relative to the plea of laches is answered by what was said in Cassidy v. Gould, 86 Okl. 217, 208 P. 780, 781, wherein we said: 'The question of whether a claim is barred by laches must be determined by the facts and circumstances in each case, and according to right and justice. Laches in legal significance is not merely delay, but delay that works a disadvantage to another.'

"Under the record here presented the delay of plaintiffs is not shown to have operated to the disadvantage of the persons who might have been entitled to urge such defense."

■ The finding of the trial court that a reformation of the deed from Ernest Archer to Emile Archer was not necessary appears to be correct since the court found that such deed was in fact delivered prior to the delivery of the deed of the same date, February 7, 1931, from Elizabeth Metcalf to Ernest Archer. We find no merit in the contention that the two deeds dated February 7, 1931, constituted one transaction. The testimony shows that it was not the intention of Ernest Archer to convey to his brother Emile more than the interest inherited by Ernest from his father. There is no evidence that the delay by the defendants worked any disadvantage to the plaintiffs.

■ It is well established that a quitclaim deed conveys only such interest as the grantor actually owned at the time of the execution of the deed. In First National Bank & Trust Co. of Tulsa v. Price, 204 Okl. 243, 228 P.2d 623, 625, it was said:

"Title 16 O.S.1941 § 18, provides: 'A quitclaim deed, made in substantial compliance with the provisions of this chapter, shall convey all the right, title and interest of the maker thereof in and to the premises therein described.'"

■ There was sufficient evidence to support the finding of the court that the quitclaim deed from Ernest Archer to his brother, Emile was delivered prior to the delivery of the mineral deed from Elizabeth Metcalf to Ernest Archer, though dated the same date. In 26 C.J.S., Deeds, § 53 a, it is said:

"A deed, in the absence of a contrary statutory provision, takes effect from the date of its delivery, not from the time of its record or date, or signing and acknowledgement, * * *."

Also in 16 Am.Jur., Deeds, § 321, it is stated:

"A deed is consummated by its delivery by the grantor and its acceptance by the grantee and becomes operative from that time. In other words, when the time of delivery is established, the time when the deed took effect is also established as a matter of law. * * *"

■ Since this is an equitable action it is the duty of this Court to weigh the evidence. We have carefully examined the evidence and find that the findings and judgment of the trial court are not against the clear weight of the evidence but are supported by sufficient competent evidence and the judgment is therefore affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and DAVISON, BLACKBIRD, JACKSON and HUNT, JJ., concur.

CORN, J., dissents.